IN THE DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AHS STAFFING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| QUEST STAFFING GROUP, INC.; | § | |
| JACLYN WARD; MICHELLE SWANN; and | § | |
| SANDRA DOMINGUEZ, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR MONETARY, DECLARATORY, AND INJUNCTIVE RELIEF

Plaintiff AHS Staffing, LLC ("AHS" or "Plaintiff") hereby files this its Original Complaint for Monetary, Declaratory, and Injunctive Relief ("Complaint") against Defendants Quest Staffing Group, Inc. ("Quest"), Jaclyn Ward ("Ward"), Michelle Swann ("Swann") and Sandra Dominguez ("Dominguez") (collectively the "Defendants," and Ward, Swann and Dominguez collectively the "Individual Defendants") and states as follows:

## PRELIMINARY STATEMENT

Plaintiff seeks monetary, declaratory, and  injunctive relief from Defendants because the Individual Defendants, former employees of Plaintiff, have violated the Computer Fraud and Abuse Act and other contractual, statutory, and common law obligations to Plaintiff.  Plaintiff discovered that the Individual Defendants—who terminated their employment to begin working for Defendant Quest, a direct competitor of Plaintiff's—surreptitiously and without authorization accessed Plaintiff's computers and/or computer network to alter, copy, and delete hundreds of Plaintiff's computer files  shortly before resigning their employment with Plaintiff to join Quest.

Further, it appears that Defendant Ward has, in direct violation of her Employment Agreement, solicited current or former customers of Plaintiff with the intent to persuade them to terminate their business relationships with Plaintiff.  Moreover, upon information and belief, Ward acted as a "ringleader" of sorts, inducing Swann and Dominguez to perform the acts alleged.  Upon information and belief, Quest was aware of and possibly encouraged the Individual Defendants' wrongful acts and, at a minimum, has benefitted from receipt of Plaintiff's trade secrets and confidential information stolen by the Individual Defendants. While Plaintiff is still in the process of discovering the scope of the harm caused by Defendants' acts, Plaintiff reserves the right to seek by separate motion injunctive relief to prevent further illegal and wrongful acts by Defendants, preserve the status quo between the parties, and avoid irreparable harm to Plaintiff's business.

## PARTIES

1.      Plaintiff AHS Staffing, LLC is an Oklahoma limited liability company with its principal place of business located at 3051 Willowood Road, Edmond, OK 73034.  Plaintiff is registered to do business as a foreign entity in the State of Texas.

2.      Defendant Quest Staffing Group, Inc. is a Texas corporation, organized under the laws of the State of Texas and, according to documents filed with the Texas Secretary of State's Office, has its principal place of business located at 9300 Wade Blvd., Suite 320, Frisco, Texas 75035.  Defendant Quest may be served with process by serving its registered agent, Olaf Turek, or any officer or other authorized person, at 9300 Wade Blvd., Suite 320, Frisco, Texas 75035.

3.      Jaclyn Ward is an individual citizen of the State of Texas who is located in and resides in the State of Texas.  Ward may be served with process at her place of business, Quest

Staffing Group, Inc., located at 9300 Wade Blvd., Suite 320, Frisco, Texas 75035, or at her residence located at 13151 Torrington Drive, Frisco, TX 75035.

4.      Michelle Swann is an individual citizen of the State of Texas who is located in and resides in the State of Texas.  Swann may be served with process at her place of business, Quest Staffing Group, Inc., located at 9300 Wade Blvd., Suite 320, Frisco, Texas 75035, or at her residence located at 6901 Napa Valley Drive, Frisco, TX 75035.

5.      Sandra Dominguez is an individual citizen of the State of Texas who is located in and resides in the State of Texas.  Dominguez may be served with process at her place of business, Quest Staffing Group, Inc., located at 9300 Wade Blvd., Suite 320, Frisco, Texas 75035, or at her residence located at 5720 Frisco Square Blvd., Apt. 4029, Frisco, TX 75034.

## JURISDICTION

6.      This action arises under 18 U.S.C. § 1030 (the Computer Fraud and Abuse Act), 28 U.S.C. § 2201 and federal common law.

7.      Subject matter jurisdiction is in this Court pursuant to 28 U.S.C. § 1331 based upon Plaintiff's claim under the Computer Fraud and Abuse Act.  Jurisdiction is further proper for any additional causes of action pursuant to 28 U.S.C. § 1367.

8.      Jurisdiction also is proper pursuant to 28 U.S.C. § 1332(a) based on the parties' diversity of citizenship and the amount of controversy, which exceeds $75,000.

## VENUE

9.      Venue is proper in the United States District Court for the Eastern District of Texas, Sherman Division pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claims occurred in this division and district and/or one or more of the Defendants resides in this division and district.

## CONDITIONS PRECEDENT

10.     Any applicable conditions precedent have been performed and/or have occurred.

## FACTS

**The Business of Plaintiff**

11.     Plaintiff is part of a family of companies that provide various forms of temporary and permanent staffing services to the medical industry.  Plaintiff's clients range from large healthcare organizations to small and mid-size regional organizations.  More specifically, Plaintiff matches nurses and other healthcare professionals ("Candidates") in all specialties on a temporary and permanent basis with a variety of healthcare organizations, including hospitals, healthcare groups, occupational healthcare clinics, individual practitioners, networks, psychiatric facilities, government institutions and managed care entities and/or through contract management groups.

12.     The healthcare staffing industry is highly competitive, and therefore, Plaintiff's ability to offer premium services and highly skilled health care providers at competitive rates is essential to its viability and continued success.

**Plaintiff's Confidential Information**

13.     Also critical to Plaintiff's continued success is its confidential and proprietary documents and information which include, but are not limited to: (1) the identity of Plaintiff's customers, clients, healthcare providers, contacts, prospects, and Candidates; (2) the business, finances and special needs of Plaintiff, its customers, clients, contacts, prospects, and Candidates; (3) Plaintiff's policies and procedures; (4) Plaintiff's compensation plans and employee benefits; (5) confidential market studies; (6) pricing studies, information and analyses; (7) current and prospective business projections; (8) business plans and strategies; (9) non-public

financial statements and information of Plaintiff, its clients and Candidates with whom Plaintiff works; (11) methods of bidding, bids to customers, clients and prospects and profit margins; (12) unique software programs and databases developed by Plaintiff including, but not limited to, all computer disks, slides, files, manuals, or other information pertaining to such software programs and databases; and (13) information regarding its employees' and Candidates' performance, compensation, skill sets and the confidential information known by the employees (collectively, Plaintiff's "Confidential Information").

14.     Plaintiff's Confidential Information was developed by Plaintiff at considerable effort and expense, is continually updated by Plaintiff, and undeniably constitutes one of Plaintiff's most valuable assets.

15.     As such, Plaintiff takes reasonable and adequate measures to protect its Confidential Information, such as keeping it stored on a secure, password-protected network and/or premises.  Plaintiff further requires its employees to sign employment agreements (the "Employment Agreements"), which reasonably restrict such employees both during and after termination of their employment from, among other things, soliciting Plaintiff's employees and/or using, disclosing and/or keeping Plaintiff's Confidential Information.

16.     These Employment Agreements, specifically Section 8 and/or Subsections 8.1–8.5 (the "Confidentiality Provision(s)") and Section 9 and/or Subsections 9.1–9.6 (the "Non-Solicitation Provision(s)"), which are set forth in pertinent part below, state:

### Section 8 – Property Rights

The following items of property are legitimate protectable business interests of the Company:

**8.1 Trade Secrets.**  The Company agrees that the Employee will be given access to and allowed to become familiar with various trade secrets of the Company to the extent applicable to the

Employee's position.  These trade secrets may include, but are not limited to compilations of information, records and specifications, customer lists, and special patterns or formulas which are regularly used in the operation of the Business of the Company ("*Trade Secrets*") as of the Effective Date.  The Employee agrees that the Employee shall not disclose, convert, or use any of the Trade Secrets, directly or indirectly, nor use them in any way, either during the term of this Agreement or thereafter; except as required in the ordinary course of the Employee's employment for the benefit of the Company.

**8.2 Proprietary Documents.**    The Company agrees that the Employee will be provided access to some Proprietary Documents of the Company to the extent applicable to the Employee's position.    For purposes of this Agreement "*Proprietary Documents*" include all documents acquired at the expense of the Company or through the labor of its employees including forms, information summaries, manuals or records, memoranda, notes, drawings, documents, or other writings whatsoever made, compiled, acquired, including but not limited to, documents containing the identities of the Company's customers, contractors, suppliers, or others with whom the Company has a business relationship, and the Company's arrangements with such parties as of the Effective Date.  The Employee agrees that the Employee shall not disclose, convert, or use any of the Proprietary Documents, directly or indirectly, nor use them in any way, either during the term of this Agreement or thereafter, except as required in the ordinary course of the Employee's employment for the benefit of the Company.

**8.3 Confidential Information.**    The Company agrees that in connection with the Employee's position with the Company, the Company will provide the Employee with access to Confidential Information about the Company and the Company's customers to the extent applicable to the Employee's position.  Accordingly, the Employee understands and agrees that the Employee shall acquire no right, title, or interest in or to any Confidential Information and that all Confidential Information remains the sole and exclusive property of the Company.  The Employee agrees not to reveal the Confidential Information to anyone other than authorized personnel of the Company or customers authorized by the Company.  Confidential Information may also be protected as a Trade Secret under Subsection 8.1, hereinabove.  For purposes of this Agreement, the term "*Confidential Information*" shall include any Trade Secrets; Proprietary Documents; information about the Company or pertaining to the Business of the Company, or the

Company's sales, financial condition, products, customers, suppliers, distributors, or inventory, technical personnel, including, but not limited to, records, lists, and knowledge of the Company's clients, customers, suppliers, distributors, licensors and licensees, technical personnel, services, methods of operation, processes, methods of determination of prices, profits, sales, net income, indebtedness, marketing data, sales techniques, advertising, traveling and canvassing methods, business ideas and opportunities, and drawings, plans, and designs as of the Effective Date, but shall not include information in the public domain at the time it was acquired or which comes into the public domain.

**8.4 Handling of Covered Items.**  All Confidential Information covered by Subsections 8.1 through 8.3, hereinabove, shall remain the exclusive property of the Company and shall not be removed from the premises of the Company under any circumstances whatsoever without the consent of the Company.  If removed from the Company premises with consent, such information and material will be used only for the benefit of the Company in the ordinary course of business. All Confidential Information covered by Subsections 8.1 through 8.3, hereinabove, is, and shall continue to be, the property of the Company, and shall, together with all copies thereof, be returned and delivered to the Company by the Employee immediately without demand, upon the termination of the Employee's employment with the Company, and shall be returned at any time if the Company so demands.

**8.5 Duty Not to Disclose.**  During and after the Term of this Agreement, the Employee agrees that the Employee will hold in confidence and not directly or indirectly reveal, report, publish, disclose, or transfer any Trade Secrets, Proprietary Documents, or Confidential Information (including the terms of this Agreement), to any person or entity, or utilize any such information for any purpose, except in the course of the Employee's performance of her obligations under this Agreement.  The Employee further agrees that the Employee will not copy or disclose any Trade Secrets, Proprietary Documents, or Confidential Information (including the terms of this Agreement) without the prior written consent of the Company.

## Section 9 – Non-Solicitation

In order to protect the goodwill of the Company as well as the other legitimate interests of the Company, among other things, protecting Confidential Information and customer relationships, the Company and the Employee hereby agree to the following

covenants, which they acknowledge and agree are reasonably necessary and tailored to protect the Company's legitimate business interests:

**9.1**    For a period equal to the longer of three (3) years after the Effective Date or two (2) years following the termination of the Employee's employment with the Company, the Employee will not, directly or indirectly, solicit, serve, sell to, divert, receive, or otherwise arrange, engage in or provide any Staffing business services for: (i) any customer of the Company (or, as applicable, any of the Company's affiliates) for which the Employee performed any Staffing Business services during the two (2) year period immediately preceding the termination of the Employee's employment with the Company, or (ii) any Prospective Client of the Company.

**9.2**    The Employee recognizes that the employees of the Company and its affiliates are a valuable resource of the Company. Accordingly, the Employee agrees that, for a period equal to the longer of three (3) years after the Effective Date or two (2) years following the termination of the Employee's employment with the Company for any reason whatsoever, the Employee will not, directly or indirectly, solicit, induce, or recruit any employee of the Company to leave her employment with the Company or any of the Company's affiliates.

**9.3**    For purposes of the covenants set forth in this Section:

…

**9.3.3 "*Staffing Business*"** means the business of contracting with pharmacies, retailers, businesses, hospitals, dialysis clinics, acute dialysis programs, and other entities in order to supply that entity with temporary, traveling or permanent pharmacists, pharmacy technicians, nurses of any specialty, dialysis nurses and dialysis technicians.

…

**9.6 Survival of Covenants.**    In the event that this Agreement is terminated for any reason or the Employee's employment with the Company is terminated for any reason, each covenant of the Employee set forth in this Section 9 shall survive the termination of this Agreement or the Employee's employment with the Company and shall be construed as an Agreement independent of any other provision of this Agreement.  The period of survival of the covenants shall be as specifically set forth in each section.  the

existence of any claim or cause of action of the Employee against the Company whether predicated on this Agreement or otherwise shall not constitute a defense to the enforcement by the Company of said covenant.

17.     Notably, the Confidentiality Provision(s) in the Employment Agreements have no expiration date; upon termination of the employment relationship, an employee is obligated to maintain the confidentiality of any Confidential Information such employee obtained as a result of his or her employment with Plaintiff.

18.     The Non-Solicitation Provision(s) are effective for the longer of three (3) years after the Effective Date or two (2) years following the termination of the Employee's employment with Plaintiff and preclude the former employee from soliciting and/or recruiting Plaintiff's and/or its affiliated companies' employees, and from soliciting or providing any Staffing Business services for competitors of AHS.

19.     In addition, Plaintiff requires all employees to receive a copy of and receive instruction and training regarding its Internal Employee Policy Guide which expressly prohibits, among other things, "Stealing from the Company" and/or "Disclosure of confidential or proprietary Company information."  Moreover, the Guide states that "All information obtained by virtue of employment with [AHS] should be held in the strictest of confidence.  The verbal or written transfer of confidential information or lists  belonging to [AHS] to unauthorized persons (especially competitors) during or after employment with [AHS] is strictly prohibited.  Possible consequences include discharge or legal action to prevent or stop any such disclosure."

20.     In exchange and/or in consideration of the above-referenced covenants, Plaintiff, among other things, provides its employees with training and constant and continual access to Plaintiff's Confidential Information.

**The Individual Defendants' Employment Agreements and Unlawful Conduct**

21.     Defendant Ward began working for Plaintiff's predecessor on August 13, 2012. Ward resigned her employment with Plaintiff on May 11, 2018.

22.     Ward served as a Recruiter for Plaintiff.  Her job responsibilities as a Recruiter included, but were not limited to, the recruitment and placement of Candidates, selling of services to clients, and account management of new and current business either on the permanent or contract side of the business.

23.     As a condition of her employment with Plaintiff, Ward signed an Employment Agreement (the "Ward Agreement") that contained identical provisions to the Confidentiality and Non-Solicitation Provisions quoted above.

24.     Pursuant to the terms of the Ward Agreement, the Confidentiality Provisions in the Ward Agreement have no expiration date and continue in perpetuity.  Meanwhile, the Non-Solicitation provisions—which, again, expressly prohibit Ward from soliciting and/or recruiting Plaintiff's and/or its affiliated companies' employees, and from soliciting or providing any Staffing Business services for competitors of AHS—remained in effect until, at least, May 11, 2020.

25.     Upon information and belief, in direct violation of the Non-Interference Provision, Ward communicated with Defendants Swann and Dominguez, employees of Plaintiff, regarding the possibility of Swann and Dominguez terminating their employment with Plaintiff and joining Ward in working for Ward's soon-to-be employer, Quest.

26.     At that time, Defendants Swann and Dominguez also were employed by Plaintiff as Recruiters.   Unlike Ward, Swann and Dominguez did not execute their respective Employment Agreements, despite promising to do so.  However, Plaintiff spoke with at least

Swann on several occasions regarding the substance and meaning of the Agreements, and both Swann and Dominguez—like Ward—received copies of Plaintiff's Internal Employee Policy Guide.    Moreover, all of the Individual Defendants participated in a mandatory training regarding the Policy Guide on March 23, 2018 in which its obligations and expectations regarding handling of Plaintiff's Confidential Information were explicitly discussed.

27.    Upon information and belief, following and as a result of, Defendant Ward's improper solicitation and/or interference, Defendants Swann and Dominguez voluntarily terminated their employment with Plaintiff on May 19, 2018 and May 11, 2018, respectively.

28.    Plaintiff shortly thereafter learned that all Individual Defendants had accepted employment with competitor Quest.

29.    Shortly after Ward terminated her employment with Plaintiff, and in further violation of her Employment Agreement, Ward began contacting Candidates contracted with Plaintiff in hopes of inducing them to terminate their relationship with Plaintiff and contract with Ward's new employer, Quest.  These communications were sent from Ward's new email address at Quest.

30.    Upon information and belief, armed with the information they stole from Plaintiff, the Individual Defendants continue to improperly solicit Candidates contracted with Plaintiff in direct violation of their employment obligations.

**Quest's Unlawful Conduct**

31.    Defendant Quest, whose office is only a few miles from Plaintiff's Frisco office, expressly represents itself to be doing business and/or making both temporary and permanent healthcare staffing placements.  Specifically, Quest's website states, "Quest has been helping

nurses find a travel opportunity that fits them since 2004." Based upon Quest's own representations, Quest is undeniably a direct competitor of Plaintiff.

32. Upon information and belief, Quest, recognizing the invaluable contact information and industry knowledge to be gained thereby, conspired with the Individual Defendants to perform the acts set forth in greater detail below.

**Ward's Unlawful Conduct**

33. Upon information and belief, and in furtherance of the aforementioned conspiracy, while Ward was still employed by Plaintiff, she improperly solicited Swann and Dominguez to terminate their employment with Plaintiff in favor of seeking employment with Ward at Quest—an act in direct violation of her Employment Agreement.

**The Individual Defendants' Unauthorized Access and Alteration of AHS's Computer Files**

34. After the Individual Defendants tendered their resignations with Plaintiff, Plaintiff initiated a review of their email, computer and physical access activity. During the review, Plaintiff discovered that the Individual Defendants had accessed Plaintiff's Applicant Tracking System ("ATS") and made significant changes thereto. ATS contains what is perhaps Plaintiff's most valuable Confidential Information: the contact information of Plaintiff's Candidates, whom Plaintiff places at various healthcare facilities as needed on a contract basis. This information is at the heart of Plaintiff's business.

35. AHS's review revealed a widespread effort by the Individual Defendants to alter hundreds of Candidates' information in various ways, including (1) deleting their assigned Recruiter, thus making it difficult to identify and reassign said Candidates, (2) changing Candidates' Status, largely from "placeable" to "non-placeable", (3) altering Candidates' contact information, and (4) adding notes falsely indicating that the Candidates were no longer available.

While Plaintiff's forensic investigation is ongoing, Plaintiff reasonably suspects, and alleges on information and belief, that Ward and the other Individual Defendants copied Candidate information or sent it to external email accounts including Quest's. Ward apparently deleted her entire email history before resigning in order to hide precisely this type of wrongful misappropriation of Plaintiff's Confidential Information.

36.    Upon  information and belief, at the time of the ATS access and alterations, the Individual Defendants already had accepted their offer of employment with Quest and/or decided to terminate their employment with Plaintiff.

37.    Tellingly, these alterations happened over a relatively brief period of time—only ten days—and only in brief windows of time during those days, usually after business hours. Even more tellingly, each Individual Defendant ceased the above alterations only two days before her respective departure from AHS.

38.    Not only did the Individual Defendants have no legitimate reason to access and/or alter these files, but they also made no effort to correct and/or restore this Confidential Information upon their resignation or to otherwise notify Plaintiff that they had made the alterations in question.

**Post-Termination Misconduct**

39.    As indicated by her subsequent contact with certain Candidates contracted with Plaintiff, at least Ward remained in possession of Plaintiff's Confidential Information in violation of Section 8.4 of her Employment Agreement.  Upon information and belief, all other named Defendants remain in possession of Plaintiff's Confidential Information as well.

40.    Again, Plaintiff's Confidential Information is a critical business asset, not made publicly available, and which was shared with the Individual Defendants only *after* receiving

their assurances—namely, the execution of the Ward Agreement and the mandatory training regarding the Internal Employee Policy Guide.  Beyond obtaining these assurances, Plaintiff took additional measures to keep its Confidential Information secret, such as keeping it stored on a secure, password-protected network, with physical access limited to those persons with appropriate security credentials.

41.    The information set forth herein shows that Ward breached her Employment Agreement with AHS by soliciting Swann and Dominguez to terminate their employment with Plaintiff; by accessing, altering, and subsequently misappropriating Plaintiff's Confidential Information; and, further, by violating several of her statutory and common law duties.

42.    The other named Defendants similarly violated several of their statutory and common law obligations.

43.    Consequently, in the days following the Individual Defendants' departure from AHS, AHS has seen a significant uptick in non-renewed contracts and failed extensions—not to mention communications with confused Candidates whose ATS profiles were altered and, consequently, have not received proper or any follow-up from AHS with regard to their prospective employment opportunities. Moreover, AHS has learned of Defendants' direct solicitation of AHS Candidates whose identities Defendants only could have learned from AHS's Confidential Information.

44.    This has caused, and will continue to cause, AHS significant financial harm and damage to its  goodwill.

## FIRST CAUSE OF ACTION – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

### (Against the Individual Defendants)

45.    Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–46 as if fully set forth herein.

46.    At all times relevant to the Complaint, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq. was in existence and in effect.  The CFAA provides in relevant part that "any person who suffers damage or loss during any 1-year period . . . aggregating at least $5,000 in value" (18 U.S.C. § 1030 (c)(4)(A)(i)(I)) may "maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief" (18 U.S.C. § 1030 (g)) against "[w]hoever:

> (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;
>
> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030 (a)(5)(A)(i).

47.    The CFAA defines the term "computer" as:

> an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device…

18 U.S.C § 1030 (e)(1).

48.    The CFAA defines the term "protected computer" as "a computer which is used in interstate or foreign commerce or communication."  18 U.S.C. § 1030 (e)(2)(B).

49.    The Individual Defendants' intentional and willful alteration of pertinent data on AHS's computers and servers is a violation of the civil provisions of the CFAA, pursuant to which Plaintiff is entitled to damages and injunctive relief or other equitable relief.

50.    Specifically, the Individual Defendants' authorization to access and use AHS's computers and computer systems was limited to good faith use for the benefit of AHS and in furtherance of their employment with AHS.

51.    Upon information and belief, the Individual Defendants knowingly caused the transmission of a program, information, code, or command, to protected computers at AHS and intentionally caused damage without authorization to AHS's computer systems, files and records in order to conceal their misconduct in misappropriating AHS trade secrets and confidential business information.

52.    The Individual Defendants' access to, downloading, copying, transferring and altering of AHS's information exceeded any authority given to them.

53.    Such actions were committed knowingly and intentionally; resulted in a personal benefit to themselves in the form of gaining employment by competing business Quest; and harmed and defrauded AHS by the loss of irreplaceable data and information exceeding at least $5,000 in aggregate value.

54.    Accordingly, the Individual Defendants' actions have caused and will cause AHS damages in an amount as yet to be determined, but which exceed the minimum jurisdictional limits of the Court.

## SECOND CAUSE OF ACTION – HARMFUL ACCESS BY COMPUTER

### (Against the Individual Defendants)

55.     Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–54 as if fully set forth herein.

56.     The Individual Defendants are liable to Plaintiff under Texas Civil Practice & Remedies Code § 143.001, *et seq.* in that Plaintiff and/or Plaintiff's property has been injured as a result of a violation under Chapter 33 of the Penal Code.   The Individual Defendants knowingly and intentionally accessed Plaintiff's computer, computer network and/or computer system without the effective consent of Plaintiff.

57.     As a result of the Individual Defendants' conduct, Plaintiff has suffered damages, including impairment of the integrity and/or availability of data and/or information in Plaintiff's computers, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT

### (Against Defendant Ward)

58.     Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–57 as if fully set forth herein.

59.     The Ward Employment Agreement was a valid and enforceable contract by and between Ward and AHS.

60.     Alternatively, if any portion of the Ward Employment Agreement is found by the Court to be unenforceable, AHS is entitled to reformation of the Ward Employment Agreement.

61.     The foregoing acts and omissions of Ward constitute material breaches of her contractual obligations under her agreement with AHS, including, but not limited to, her obligations of confidentiality, non-disclosure, and non-solicitation.

62.     AHS has performed and satisfied all of its contractual obligations pursuant to the Ward Employment Agreement.

63.     As a direct and proximate result of Ward's breach of the agreement, AHS has suffered and will suffer damages, for which it seeks recovery herein.

64.     All conditions precedent to the institution of the action have occurred or have been waived.

## FOURTH CAUSE OF ACTION – REQUEST FOR DECLARATORY RELIEF

### (Against Defendant Ward)

65.     Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–64 as if fully set forth herein.

66.     In accordance with 28 U.S.C. §§ 2201–2202, Plaintiff requests that the Court declare the respective rights and duties of AHS and Ward under the Ward Employment Agreement.  In particular, AHS seeks to settle and be afforded relief from uncertainty and insecurity with respect to the rights, status, or other legal relations that it and Ward may have under the Ward Employment Agreement.  AHS seeks a declaration that the Ward Employment Agreement is valid and binding on Ward, and, specifically, that the non-solicitation, confidentiality and non-disclosure provisions in the Ward Employment Agreement are valid and binding on Ward.

67.     AHS also seeks a declaration that Ward has breached the terms of the Ward Employment Agreement, entitling AHS to either compensatory or equitable damages or both.

68.     A valid case or controversy exists sufficient for the Court to declare the rights and remedies of the Parties in that there is and continues to be a dispute between the Parties regarding Ward's obligations to AHS.

69.    The controversy is ripe for determination at the time because Ward's statements and actions demonstrate that she is violating and will continue to violate the terms of the Ward Employment Agreement.

## FIFTH CAUSE OF ACTION – UNFAIR COMPETITION AND MISAPPROPRIATION OF TRADE SECRETS AND/OR CONFIDENTIAL INFORMATION

### (Against All Defendants)

70.    Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–69 as if fully set forth herein.

71.    AHS owns trade secrets and confidential business information, including those identified herein, that are not generally known in the industry and are, therefore, sufficiently secret to derive economic value, both actual and potential.

72.    AHS obtained and developed such trade secrets over many years and at great expense.

73.    As set forth herein, AHS engaged in reasonable methods and practices to maintain the secrecy of its trade secrets and confidential business information as appropriate.

74.    As trusted agents of AHS, the Individual Defendants were under an obligation to maintain the confidentiality of AHS's confidential and proprietary data and owed contractual and common law duties to AHS not to disclose or use the information.

75.    By engaging in the conduct alleged herein, the Individual Defendants have misappropriated, retained and misused AHS's trade secrets and confidential business information for their benefit, the benefit of a direct competitor, and to the detriment of AHS, resulting in AHS's loss of unique development opportunities and a competitive advantage over its competitors.

76.     The Individual Defendants have used and disclosed, and will inevitably continue to use and disclose AHS's trade secrets and confidential information because the Individual Defendants are now working for a direct competitor in a similar capacity as they had at AHS, and their duties would necessarily cause them to use or disclose AHS's trade secrets and confidential information.

77.     Because of the Individual Defendants' misappropriation, Quest has acquired the trade secrets and confidential business information by improper means and is using AHS's property to compete in an unlawful way.

78.     In so doing, Defendants are gaining an unfair advantage and putting themselves in a position to divert sufficient business away from AHS.  Had the Individual Defendants not held positions of trust at AHS, such information and knowledge never would have been available to them for use to benefit themselves and Quest's competing business.

79.     The unfair competition and misappropriation of trade secrets and confidential information is wrongful and the Defendants' utilization of such information affords AHS injunctive relief and damages.

80.     Additionally, Defendants' unlawful acts were malicious in that they were done with specific intent to cause substantial injury to AHS and involved an extreme degree of risk to Plaintiff, of which Defendants were aware and consciously ignored.  Accordingly, AHS is entitled to disgorgement of all compensation paid to Defendants during the time they breached their duties as employees, and is entitled to an award of exemplary and punitive damages.

## SIXTH CAUSE OF ACTION – TORTIOUS INTERFERENCE

### (Against All Defendants)

81.     Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–80 as if fully set forth herein.

82.     As described above, Defendants have tortiously interfered with AHS's business relations by unlawfully interfering with AHS's existing and prospective customer relationships.

83.     But for Defendants' interference, AHS had a reasonable probability of continuing and maintaining such relationships with its customers and Candidates, including those contacted by Ward.

84.     Defendants' actions of interfering with AHS's existing and prospective business relations were intentional and wrongful.  Specifically, Ward's conduct was not privileged, was unjustified, and was intended to harm AHS.

85.     As a proximate result of Defendants' acts of interference, AHS has suffered damages in the form of loss and misuse of proprietary assets, loss of profits, loss of business goodwill, loss of customers, a loss of future business opportunities and increased financial risk.

86.     Defendants' tortious interference was done with malice for which the law allows imposition of exemplary and punitive damages.  AHS will show that Defendants acted with the intent to harm AHS and that their tortious acts were done with ill will and spite, and without justification or excuse.  Therefore, AHS is entitled to recover exemplary and punitive damages from Defendants.

## SEVENTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

### (Against the Individual Defendants)

87.    Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–86 as if fully set forth herein.

88.    As agents of AHS, and people who were placed in a position of trust and confidence at AHS, the Individual Defendants owed AHS certain fiduciary duties both during and after their employment.

89.    The Individual Defendants have breached one or more of their fiduciary duties to AHS by, amongst other things: (1) breaching their duty of loyalty; (2) breaching their duty of candor; (3) breaching their duty to act with integrity of the strictest kind; (4) breaching their duty of honesty and fair dealing; (5) breaching their duty of full disclosure; (6) breaching their duty to account for company property; (7) breaching their duty to refrain from competition/solicitation with Plaintiff; and/or (8) misappropriating and disclosing Plaintiff's confidential, proprietary, and trade secret information.

90.    Plaintiff has suffered irreparable harm and injury as a result of the Individual Defendants' breaches of their fiduciary duties for which there is no adequate remedy at law.

91.    Additionally, as a proximate cause of the Individual Defendants' breaches of their fiduciary duties, Plaintiff has suffered monetary damages within the jurisdictional limits of this Court.

## EIGHTH CAUSE OF ACTION – CIVIL CONSPIRACY

### (Against All Defendants)

92.    Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–91 as if fully set forth herein.

93.     Upon information and belief, all Defendants  conspired to misappropriate AHS's trade secrets and confidential business information,  interfere with AHS's contract with Ward and existing and prospective business relationships, breach the Individual Defendants' fiduciary duties to Plaintiff, and each and all of the other wrongful acts alleged herein.

94.     The Defendants acted intentionally with the object of diverting business away from AHS and causing financial harm to it.

95.     Defendants performed one or more unlawful, overt acts in furtherance of the conspiracy.  These unlawful, overt acts proximately caused damages to AHS, including the loss of business opportunity and assumption of additional risk.

96.     Because of the acts and practices of Defendants, AHS has suffered and will suffer damages in an amount as yet to be determined, but which exceed the minimum jurisdictional limits of the Court, which also include punitive/exemplary damages.

## NINTH CAUSE OF ACTION – THEFT LIABILITY ACT

### (Against the Individual Defendants)

97.     Plaintiff incorporates and re-alleges all of the allegations in the foregoing Paragraphs 1–96 as if fully set forth herein.

98.     Plaintiff AHS had a possessory right to its trade secrets and confidential business and proprietary information.

99.     The Individual Defendants unlawfully appropriated, secured or stole AHS's trade secrets, confidential business information and proprietary information and data.

100.    The Individual Defendants' actions were done with the intent to deprive AHS of its property and AHS has sustained damages as a result.

101.    Thus, the Individual Defendants have committed acts of theft that give rise to liability under the Texas Theft Liability Act, Texas Civil Practices & Remedies Code § 134.001, et seq.

## REQUEST FOR AWARD OF ATTORNEY'S FEES AND OTHER COSTS

102.    As a result of Defendants' conduct as described above, AHS has been required to retain the undersigned attorneys in connection with the matter.  AHS has agreed to pay the undersigned attorneys a reasonable fee for their services.  Accordingly, AHS respectfully requests that the Court award it reasonable attorneys' fees and other costs as authorized by statute and contract.

## DEMAND FOR TRIAL BY JURY

103.    AHS hereby demands trial by jury on all claims for which the law provides a right to jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, AHS respectfully requests that the Court enter final judgment awarding AHS the appropriate relief in the proceeding as follows:

a)    AHS be awarded all general and special damages it has incurred as a result of the Defendants' conduct referenced herein;

b)    AHS be awarded punitive and exemplary damages as a result of Defendants' conduct referenced herein;

c)    AHS be awarded all attorneys' fees and costs of suit incurred in the action;

d)    AHS be awarded pre- and post-judgment interest as provided by law; and

e)    AHS be awarded all other relief to which it may be entitled, at law or in equity.

Respectfully submitted,

BAKER & MCKENZIE LLP

By:  _/s/ Brian J. Hurst_____
     Brian J. Hurst
     State Bar No. 10313300
     E-Mail: brian.hurst@bakermckenzie.com
     Amanda C. Praestholm
     State Bar No. 24105952
     E-Mail: amanda.praestholm@bakermckenzie.com

1900 North Pearl Street
Suite 1500
Dallas, TX  75201
Telephone: +1 214 978 3000
Facsimile: +1 214 978 3099

ATTORNEYS FOR PLAINTIFF
AHS STAFFING, LLC